**RADISSON HOTELS INTERNATIONAL, INC., Plaintiff,**

v.

**WESTIN HOTEL COMPANY, d/b/a Westin Hotels and Resorts, and Juergen Bartels, and Schoeneckers, Inc., d/b/a Business Incentives and/or BI Performance Services, Defendants.**

Civil No. 3–96–48.

United States District Court,
D. Minnesota,
Third Division.

June 28, 1996.

Earl Reiland and David Oslund, Merchant & Gould, Minneapolis, Minnesota, for Plaintiff.

Daniel J. Maertens, Fredrickson & Byron, Minneapolis, Minnesota, for Defendants.

## MEMORANDUM OPINION AND ORDER

KYLE, District Judge.

### Introduction

Plaintiff Radisson Hotels International, Inc. ("Radisson") commenced this action against Defendants alleging patent infringement; misappropriation of trade secrets under the Minnesota Uniform Trade Secrets Act, Minnesota Statutes sections 325C.01; and common law claims for unfair competition and breach of contract. Jurisdiction over this action arises under 28 U.S.C. §§ 1331, 1338 and 1367. Currently before the Court are (1) Defendants' Motion to Transfer Venue pursuant to 28 U.S.C. § 1404(a)[1] and (2) Defendants' Motion to

---

**1.** Defendants initially moved to dismiss for lack of personal jurisdiction or to transfer venue and

Dismiss or for a More Definite Statement pursuant to Rules 12(b)(6) and 12(e) of the Federal Rules of Civil Procedure. For the reasons set forth below, the Court will deny both Motions.

## Background

### I. Parties

Radisson is a Delaware corporation with its principal place of business in Minneapolis, Minnesota; Radisson is engaged in the business of operating, managing, and franchising hotels. (Second Am. Compl. ¶ 11.)

Westin Hotel Company, d/b/a Westin Hotels and Resorts ("Westin") is a Delaware corporation with its principal place of business located in Seattle, Washington; Westin competes with Radisson in the hotel industry. (Second Am. Compl. ¶ 12.) Juergen Bartels ("Bartels") is a German citizen; Bartels is a former employee of Radisson and the current Chief Executive Officer of Westin. (Second Am. Compl. ¶¶ 3, 12a.) Schoeneckers, Inc., d/b/a Business Incentives and/or BI Performance Services ("BI") is a Minnesota corporation with its principal place of business located in Minneapolis, Minnesota; BI assisted both Radisson and Westin in administering travel-related marketing programs.[2] (Heintzeman Decl. ¶ 5; Crawford Decl. ¶ 6.)

### II. Factual Background

#### A. Radisson's Travel Reservation Incentive Program

This action relates Radisson and Westin's use of certain travel reservation marketing systems. Radisson claims it developed an innovative marketing system known as the "Look to Book" program. Under this program, travel agents who make travel-related reservations with Radisson receive credits which are redeemable for various "incentive" prizes. On October 26, 1993, Radisson filed an application with the United States Patent Office seeking to patent certain aspects of its Look to Book program. (Maertens Aff., Ex.

C.) This application was initially rejected. (Maertens Aff., Ex. D.) Radisson subsequently amended its application and, on January 9, 1996, Radisson, as assignee, was issued United States Patent No. 5,483,444 (the "'444 patent"), entitled "System for Awarding Credits to Persons who Book Travel-Related Reservations."

Defendant Bartels worked as a "high-level employee" for Radisson during the development of its "Look to Book" incentive program. (Second Am. Compl. ¶¶ 1–4.) Radisson claims that Bartels became familiar with the operation of this program, and in particular, that he "gained access to a broad range of Radisson proprietary and trade secret information, including marketing and strategy information related to the 'Look to Book' system." (Second Am.Compl. ¶ 2, 5.)

Bartels left his position with Radisson in May, 1995 and began working for Westin. Radisson claims that, upon his arrival at Westin, Bartels wrongfully used Radisson's proprietary and trade secret information to assist Westin in developing a competing travel counselor incentive program, referred to as "Westin Communications." (Second Am. Compl. ¶ 7.) Westin began using this program in the fall of 1995.

Shortly after it received the '444 patent, Radisson commenced the present action alleging the Westin incentive program infringes upon the '444 patent (Count I). Based on Bartel's involvement in the development of the Westin program, Radisson further alleges trade secret misappropriation (Count II), unfair competition (Count III), and breach of contract (Count IV).

In the present Motions, Defendants seek (1) an order transferring this action to the United States District Court for the Western District of Washington, (2) an order dismissing Radisson's state law claims (Counts II–IV) or, alternatively, an order directing Radisson to more specifically plead these claims.

---

addressed these two motions in a single memorandum of law. Defendants subsequently withdrew their motion to dismiss for lack of personal jurisdiction. (*See* Doc. No. 35.)

**2.** BI did not file materials in support of the Motions before the Court; BI did, however, file a document stating that it joined in Westin and Bartels' Motion to Transfer Venue. (*See* Doc. No. 85.)

## Discussion

### I.  Motion to Transfer Venue

■ Defendants have moved to transfer venue pursuant to 28 U.S.C. § 1404(a), which provides: "[f]or the convenience of the parties and witnesses, in the interests of justice, a district court may transfer any civil action to any other district or division where it might have been brought."  Transfer under § 1404(a) "should not be freely granted." *United Mortgage Corp. v. Plaza Mortgage Corp.*, 853 F.Supp. 311, 314 (D.Minn.1994). Rather, the party seeking to transfer bears a "heavy burden" of showing that "the balance of factors *strongly* favors the movant." *Id.* at 315 (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947) (emphasis in original)).  In determining whether to transfer venue under § 1404(a), courts consider three factors:  (1) the convenience of the parties, (2) the convenience of witnesses, and (3) the interests of justice. *Nelson v. Bekins Van Lines Co.*, 747 F.Supp. 532, 535 (D.Minn.1990).

### A.  Analysis

#### 1.  Convenience of the Parties

■ Defendants claim the Western District of Washington is a more convenient forum for the parties because, *inter alia:* (1) Westin is incorporated and does business in Washington; (2) Westin does not have offices, properties, or employees in Minnesota; (3) Bartels is a resident of Washington; (4) the "sources of material" for Westin Communications are located in Washington and little of Radisson's evidence is located in Minnesota;  and (5) Radisson conducts substantial business in Washington.  (Def.'s Mem. in Supp. of Mot. to Trans.Venue at 19; Walker Aff. ¶¶ 14–23.)

Alternatively, Radisson claims Minnesota is a more convenient forum for it because its principal place of business is located in Minnesota; BI's principal place of business is in Minnesota; and the documents pertinent to the '444 patent, the "Look to Book" program development and proprietary information, and documents relating to BI's involvement with the Westin system are all located in Minnesota.  (Pl.'s Mem. in Opp'n to Mot. to Trans.Venue at 7;  Berkwitz Decl. ¶¶ 8–9.)

■ The Court has examined the submissions of the parties and finds that Minnesota is a more convenient venue for Radisson and the Western District of Washington is more convenient for the Defendants.  However, § 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient.  *See Nelson v. Master Lease Corp.*, 759 F.Supp. 1397, 1401 (D.Minn.1991) (noting that "transfer should not be granted if the effect is simply to shift the inconvenience to the party resisting the transfer") (citing *VanDusen v. Barrack*, 376 U.S. 612, 646, 84 S.Ct. 805, 824, 11 L.Ed.2d 945 (1964)).  Defendants have accordingly failed to show this factor weighs heavily in favor of transferring this action pursuant to § 1404(a).

#### 2.  Convenience of the Witnesses

Both parties have provided lists of witnesses expected to testify to important issues at trial.  Not surprisingly, a great number of the witnesses listed by Defendants are located in Washington, while Radisson has provided an equally exhaustive list of witnesses who are located in Minnesota.  (*See e.g.*, Norlander Decl. ¶¶ 3–6; Miller Aff. ¶ 8; Berkwitz ¶¶ 3–8;  Walker Supp. Aff. ¶¶ 4–10.) The vast majority of these witnesses are employees of one of the parties whom are alleged to be "necessary" or "important" fact witnesses.  Neither party has provided evidence that a substantial number of third-party witnesses will suffer hardship if this action is tried in either Washington or Minnesota.  Based on their representations, either Minnesota or Washington will be inconvenient for some of the witnesses; however, on balance, the Defendants have failed to show litigating this action in Washington will be substantially more convenient for the majority of the witnesses involved.

#### 3.  Interests of Justice

■ The interest of justice has been deemed the most important § 1404(a) factor. *See Nelson*, 759 F.Supp. at 1402 (citing cases).  In considering the interests of justice, courts consider the relative ability of the

parties to bear the expenses of litigating in a distant forum and the relative familiarity of the two courts with the law to be applied. *Id.* at 1403 (citing cases).

In this case, the interests of justice do not favor transfer to the Western District of Washington. The Defendants have not demonstrated that litigating this action in Minnesota will cause an unjust financial hardship. Westin is a large corporation with multinational operations; it is not unreasonable to expect it to travel to Minnesota to defend its corporate interests. BI is also a large corporation located in Minnesota; to the extent travel costs are important to BI, Minnesota, not Washington, is the more suitable forum. Finally, although Defendant Bartels is sued individually, Bartels has not demonstrated litigating this action in Minnesota will cause substantial hardship, nor on this record would such a claim be meritorious. Additionally, this action involves several claims governed by Minnesota law. While the federal court in Washington is fully capable of applying Minnesota law, on balance, this Court is more likely to be familiar with the applicable Minnesota law than the Washington Court.

The Defendants have not specifically addressed how the interests of justice will be served by transferring this action. Rather, Defendants place great emphasis on their contention that the "infringing" activity alleged to have occurred in this case took place in Washington. (*See* Defs.' Mem. in Supp. of Mot. to Trans Venue at 22 ("The most important factor in the analysis of this motion is that all of the alleged infringing activity occurred in Seattle").) While the Supreme Court has recognized that "jury duty is not to be imposed upon the people of a community which has no relation to the litigation,"

(*Gilbert,* 330 U.S. at 508, 67 S.Ct. at 843) that concern is not implicated here. Radisson and BI are based in Minnesota, and Radisson alleges, *inter alia,* that Defendants violated Minnesota law. By itself, the "fact"[3] that the alleged illegal conduct took place primarily outside the forum is not relevant in the § 1404(a) analysis.[4]

### 4. Summary

The Court has considered the three factors set out in the language of § 1404(a). None of these factors strongly favors transferring this action to the Western District of Washington. The Defendants' Motion to transfer will accordingly be denied.

## II. Defendants' Motion to Dismiss or for More Definite Statement

The Defendants' Motion to Dismiss or for More Definite Statement relates solely to Radisson's three Minnesota counts: (1) trade secret misappropriation; (2) unfair competition, and (3) breach of contract. The Defendants contend these three counts are ambiguous, indefinite, redundant and do not fairly apprise Defendants of the grounds upon which each of these claims rests. Defendants seek dismissal of these counts under Rule 12(b)(6) or, alternatively, seek an order directing Radisson to replead these counts with more particularity under Rule 12(e).

### A. Rule 12(b)(6)

On a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the district court must take as true the allegations of the complaint. *Cooper v.*

---

3. Radisson does not agree with this characterization and claims that the infringement and other illegal conduct has a substantial connection to Minnesota.

4. Defendants argue that in applying § 1404(a) in a patent infringement case, the Court should place great emphasis on the "hub" or "center of gravity" of the alleged infringing activity. (Defs.' Reply Mem. in Supp. of Mot. to Trans.Venue at 5–7 (citing *Laitram Corp. v. Morehouse Indus., Inc.,* 1994 WL 97819 1994 U.S.Dist.Lexis 3492 (E.D.La. Mar. 22, 1994).) The Defendants have provided no authority to show the three prong

test mandated by the language in § 1404(a) and the law in this Circuit has been supplanted by this standard in patent infringement actions. Indeed, the Court in *Laitram* specifically applied the three § 1404(a) factors. *See Laitram,* 1994 WL 97819 at *4 1994 U.S.Dist.Lexis at 13. Moreover, on this record, the Court could not conclude that the challenged infringing activity took place in Washington. Finally, Defendants ignore the fact that Radisson has alleged three counts arising under Minnesota law in addition to the infringement count, and that these counts relate to activity which occurred in Minnesota.

*Pate,* 378 U.S. 546, 546, 84 S.Ct. 1733, 1733, 12 L.Ed.2d 1030 (1964) (per curiam). The court "may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)). In making this analysis, "[a] complaint must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. 'Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief.'" *Fusco v. Xerox Corp.,* 676 F.2d 332, 334 (8th Cir.1982) (quoting *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979)).

■ Defendants have not demonstrated the allegations in Radisson's Second Amended Complaint are legally deficient under the strictures of Rule 12(b)(6). Count II alleges Defendants violated Minnesota Statutes sections 325C.01 *et seq.* by wrongfully acquiring and using "Radisson trade secret and confidential information relating to Radisson's 'Look to Book' incentive program, Radisson's valued customers, marketing information concerning the 'Look to Book' program, and other trade secret information related to the hospitality business in which Radisson and Westin compete." (Second Am.Compl. ¶ 37.) There are no facts alleged showing Radisson cannot, as a matter of law, prevail on that allegation. With respect to this count, Defendants' Motion is without merit.

■ Count IV realleges the preceding paragraphs of the Second Amended Complaint and claims:

> Defendant Bartels has a contractual duty not to disclose or use Radisson trade secrets or confidential information in his new employment. Defendants Westin and Bartels knew or had reason to know these contractual obligations and therefore either breached or induced the breach of these contractual obligations. Defendants ... are liable to Radisson for breach of contract and/or inducement of such breach.

(Second Am.Compl. ¶ 51.) As with Count II, Defendants have failed to show this claim fails as a matter of law. There are certainly facts "consistent with the allegations" in Count III which could support a breach of contract claim.[5]

Count III alleges Defendants Westin and Bartels' conduct, as previously described in the preceding paragraphs of Second Amended Complaint, constitute common law unfair competition. Defendants argue this Count must be dismissed under Rule 12(b)(6) because "common law unfair competition is not a viable cause of action in Minnesota." (Defs.' Mem. in Supp. of Mot. to Dismiss at 8.) In support of their argument, Defendant cite *Northwest Airlines v. American Airlines,* 853 F.Supp. 1110 (D.Minn.1994), which held that a plaintiff's claim for unfair competition would be "dismissed as duplicative" because it "[did] not appear to state any claim not already contained in its interference with contract and misappropriation of trade secret claims." *Id.* at 1113 n. 4.

■ Defendant's claim that Minnesota does not recognize a cause of action for unfair competition is clearly wrong. Minnesota recognizes unfair competition as an independent cause of action.[6] *See Dalco Corp. v. WAPCO Constructors, Inc.,* 520 F.Supp. 186 (D.C.La.1981); *United Ins. Co. of America v. B.W. Rudy, Inc.,* 42 F.R.D. 398 (D.C.Pa.1967). As noted, Defendants have filed a 12(e) motion with respect to Counts II and IV, and that motion will be discussed below.

---

**5.** With respect to Counts II and IV, the substance of Defendants' objections does not go to whether these claims as stated are recognized by law, as required by Rule 12(b)(6), but rather whether these counts state a claim with sufficient detail, as required by Rule 8. The proper motion in such a case is not a motion to dismiss under Rule 12(b)(6), but a motion for a more definite statement under Rule 12(e). *See Frito–Lay, Inc. v.*

**6.** *Northwest Airlines* stated that "[u]nder Minnesota law, unfair competition is not a unique tort

*Dixon,* 338 N.W.2d 437, 441 (Minn.1983); *Rehabilitation Specialists, Inc. v. Koering,* 404 N.W.2d 301, 305 (Minn.Ct.App.1987); *Crown Holding Corp. v. Larson,* 410 N.W.2d 373 (Minn.Ct.App.1987). In their Reply Memorandum, Defendants further argue that their objection to Radisson's unfair competition count is that this claim duplicates Counts II and IV. The Court will not make this finding at this early stage of the litigation. The Second Amended Complaint does not, and need not, set forth a detailed account of the manner in which the Defendants engaged in unfair competition. The Court does not find Radisson's unfair competition claim is necessarily based on precisely the same conduct as the trade secret and breach of contract claims alleged in Counts II and IV, or that the legal elements of Radisson's unfair competition claim are necessarily subsumed within the requirements for trade secret misappropriation and breach of contract. As a result, Count III will not be dismissed under Rule 12(b)(6).

### B. *Rule 12(e)*

Rule 12(e) of the Federal Rules of Civil Procedure provides as follows:

> If a pleading to which a responsive pleading is permitted is so vague or ambiguous that a party cannot reasonably be required to frame a responsive pleading, the party may move for a more definite statement before interposing a responsive pleading. The motion shall point out the defects complained of and the details desired.

Fed.R.Civ.P. 12(e). Defendants claim Counts II, III and IV of the Second Amended Complaint are impermissibly vague and ambiguous under this Rule.

■ In considering whether to grant a Rule 12(e) motion, the Court's inquiry is guided by the federal pleading requirements. The Supreme Court has explained that:

> The federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is "a short and plain statement of the claims" that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests.

*Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957).[7] Due to this liberal notice-pleading standard and the availability of extensive discovery, Rule 12(e) motions are disfavored. *Resolution Trust Corp. v. Gershman,* 829 F.Supp. 1095, 1103 (E.D.Mo. 1993) (citing cases); *Sagan v. Apple Computer, Inc.,* 874 F.Supp. 1072, 1077 (C.D.Cal. 1994); *Frederick v. Koziol,* 727 F.Supp. 1019, 1020 (E.D.Va.1990). Thus "[r]ule 12(e) provides a remedy for unintelligible pleadings; it is not intended to correct a claimed lack of detail." *Resolution Trust,* 829 F.Supp. at 1103.

The Court has reviewed the allegations contained in Counts II, III, and IV, and together with the paragraphs incorporated into these Counts, finds they amply set forth a "short and plain" statement of Radisson's claims sufficient to provide Defendants with a basis to form a responsive pleading. The detail Defendants seek may be obtained through discovery.

### Conclusion

Accordingly, based on the foregoing, and upon all the files, records and proceedings herein, **IT IS ORDERED** that:

(1) Defendants' Motion to Transfer Venue (Doc. Nos. 40, 65) is **DENIED;** and

---

with specific elements, but rather a 'general category of torts' recognized for the protection of certain interests." *Northwest Airlines,* 853 F.Supp. at 1113 n. 4 (citing *Rehabilitation Specialists, Inc. v. Koering,* 404 N.W.2d 301, 305 (Minn.Ct.App.1987).) It did not find a claim for unfair competition was barred as a matter of law; it merely held that on the particular facts of that case, the claim was redundant.

7. Fed.R.Civ.P. 8(a) provides in pertinent part that "[a] pleading which sets forth a claim for relief ... shall contain ... (2) a short and plain statement of the claim showing that the pleader is entitled to relief."

(2) Defendants' Motion to Dismiss or for a More Definite Statement (Doc. Nos. 56, 77) is **DENIED.**[8]

---

8. The parties were advised at the June 27, 1996 hearing that Plaintiff's request/suggestion of Rule 11 sanctions would not be considered by the Court in the absence of a motion—which is not encouraged.